UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOE C. SIMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:04CV1700-DJS |
| | ) |
| HENRY M. PAULSON, SECRETARY | ) |
| OF THE TREASURY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff asserts eight different counts of employment discrimination and retaliation in his amended consolidated complaint against his employer, the Secretary of the United States Department of the Treasury.[1] Under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, plaintiff alleges that during his employ with the Internal Revenue Service (IRS) defendant passed up plaintiff for multiple temporary and permanent promotions and gave plaintiff lower numerical performance ratings due to his race (African American) and his gender, and in retaliation for plaintiff engaging in activity protected under Title VII. Now before the Court is

---

[1] Although plaintiff's amended consolidated complaint names John W. Snow as the defendant, pursuant to Fed. R. Civ. P. 25(d)(1) the Court will order that Henry M. Paulson, the current Secretary of the Treasury, be substituted for defendant Snow.

defendant's motion to dismiss or, alternatively, for summary judgment.

Counts V and VIII, which were brought under § 1981, are preempted by Title VII, 42 U.S.C. § 2000e-5, as it "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976); Mathis v. Henderson, 243 F.3d 446, 449 (8th Cir. 2001). Plaintiff does not contest that Counts V and VIII should be dismissed.

Of plaintiff's remaining claims, Counts I and II assert that the non-selection of plaintiff for the positions of Portfolio Manager and Project Manager, respectively, was due to plaintiff's race and gender. Counts III and VI assert that plaintiff was denied employment opportunities because of his race and gender and in retaliation for plaintiff engaging in activity protected under Title VII. Finally, Counts IV and VII assert that plaintiff was given lower numerical performance ratings in March 2003 and March 2004, respectively, because of his race and gender and in retaliation for plaintiff engaging in activity protected under Title VII.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Reich v. Conagra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). The Court is "required to view all of the

2

evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Id.

> [T]he plaintiff must first establish a prima facie case of discrimination, which has the effect of creating a legal presumption of unlawful discrimination. The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. If the employer meets this burden, the presumption created by the prima facie case is rebutted and drops from the case. The burden of production then shifts back to the plaintiff to show that the proffered reason was a pretext for unlawful discrimination. This last step requires a two-part showing--the plaintiff must show: (1) that the employer's proffered reason is pretextual; and (2) that intentional discrimination is the real reason.

Russell v. Men's Wearhouse, Inc., 170 F.3d 1156, 1157 (8th Cir. 1999) (internal citations omitted); see also Ryther v. KARE 11, 108 F.3d 832, 838 (8th Cir. 1997) (en banc).

To make a prima facie showing of discrimination, plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently. Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003). Whereas, to establish a prima facie case of a retaliation claim plaintiff must show that: (1) he engaged in activity protected under Title VII; (2) he subsequently suffered an adverse employment action by the defendant; and (3) a causal connection existed between plaintiff's activity and the adverse

3

action.  <u>Rheineck v. Hutchinson Tech., Inc.</u>, 261 F.3d 751, 757 (8th Cir. 2001).  Upon review of the plaintiff's remaining claims, the Court will grant summary judgment in favor of defendant and against plaintiff on Counts I-IV, VI, and VII.

**A.  Counts I and II:  Plaintiff Cannot Show That the Reasons He Was Not Promoted to Portfolio or Project Manager Are Pretextual**

In Counts I and II, plaintiff alleges that his non-selection for the position of Portfolio Manager and the selection of Joyce Meyer, a Caucasian female, and his non-selection for the position of Project Manager and the selection of another Caucasian female, Sandra Turk, were unlawful because his race and gender were used as factors in defendant's promotional decisions.  Plaintiff had been employed as a GS-12 Team Leader Specialist in the Real Estate Section of St. Louis since 2000.  The team leader positions were consolidated in 2002 into the new positions of Portfolio Manager and Project Manager.  Once the Portfolio and Project Manager positions were filled, the team leader positions were abolished.  Plaintiff applied for both of the new positions.

For the position of Portfolio Manager, defendant interviewed the four "Best Qualified" individuals, including plaintiff.  The interviewing panel included one African American male, one Caucasian male, and two Caucasian females. The selecting official, Cindy Moline, a Caucasian female and plaintiff's second-level supervisor, asserts that she selected Ms. Meyer based on Moline's own observations during the interviews and on the

interview panel's recommendation. For the position of Project Manager, the same interviewing panel interviewed the five "Best Qualified" individuals, including plaintiff. The selecting official, Janet Polsinelli, a Caucasian female and plaintiff's third-level supervisor, reported that she selected Ms. Turk based on the interview panel's recommendation.

Assuming plaintiff can establish a prima facie case, defendant provides legitimate, nondiscriminatory reasons for not selecting plaintiff. The selection committee reported that the selectees performed well in the interviews, giving very specific examples as to how their prior experiences would be a benefit to their future prospective positions, whereas plaintiff was vague, did not go into detail, and would simply say he was not familiar with a topic when he did not know the answer to a question. Additionally, members of the selection committee thought plaintiff was unprepared for the interview for the Project Manager position. This Court will not "sit as [a] super-personnel department[] reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (citation omitted).

The burden then shifts back to plaintiff to show that he has:

> sufficient admissible evidence from which a rational fact finder could find that [defendant's] proffered nondiscriminatory reasons are either untrue or were not

5

the real reasons for the action, and that intentional discrimination was the real reason.

McCullough v. Real Foods, Inc., 140 F.3d 1123, 1127 (8th Cir. 1998) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). Plaintiff argues that he had more experience in Facilities Management and had managed more projects than Meyer. Plaintiff further argues that Meyer, a GS-11 employee at the time, had been unfairly given a recent assignment related to the Portfolio Manager position which plaintiff had not been offered.[2] This position required Meyer to have more contact in meetings with Moline and Marianne Davis--a Caucasian female, the Section Chief, and plaintiff's immediate supervisor.

Meyer's assignment consolidated the rent program responsibilities each of the GS-11 employees had to one person.[3] Plaintiff was a GS-12 employee and a team leader, two factors which weighed heavily against his chances to be selected by Section Chief Davis. Team leaders oversaw the projects and reviewed space requests, but never dealt directly with the rent program. Additionally, Davis was not aware that the manager positions would

---

[2] Plaintiff asserts that Moline stated that this gave Meyer a competitive advantage in getting the Portfolio Manager position. However, plaintiff's citation to the record does not support that assertion.

[3] Part of those responsibilities also fell to a GS-7 grade employee prior to the consolidation. A determination was made at the national level that these responsibilities needed to be assigned to a higher-graded person.

6

be created until after Meyer had been assigned to the rent program. Thus, Davis could not have given Meyer preferential treatment.

With respect to the Project Manager position, plaintiff argues his experience and familiarity with the Facilities Management St. Louis branch office and its customers as compared to Turk's familiarity with the Austin "campus" office made him a better candidate. The pleadings before the Court indicate that Turk had management experience.[4]

All the candidates on the "Best Qualified" lists were well qualified for the positions. The employees on the lists were selected at a national level from a national pool. "[An] employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981). That discretion is even greater when the employer is filling a management-level position. Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987).

Plaintiff argues that he only needs to "adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove defendant's articulated reasons for its actions." Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940,

---

[4] Defendant asserts that Turk had two years of experience acting as Section Chief. Although plaintiff does not respond, the record defendant cites to does not completely support that statement.

7

946 (8th Cir. 1994). However, the Court is not persuaded that plaintiff has created a genuine doubt as to the legitimacy of defendant's motive.

> [A] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons were pretextual and (2) creates a reasonable inference that [race and/or gender were] determinative factor[s] in the adverse employment decision.

Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1336 (8th Cir. 1996). Plaintiff's arguments are largely conclusory, subjective, and unsupported. Merely arguing that plaintiff was better qualified without evidence that the selected applicant was unqualified does not present evidence of pretext. Davis v. KARK-TV, Inc., 421 F.3d 699, 705 (8th Cir. 2005). For the above reasons, the Court will grant summary judgment in favor of defendant on Counts I and II.

**B. Count III: Plaintiff's Claims Concerning the Denial of Promotional and Career Development Opportunities Do Not Make a Prima Facie Showing of Either Discrimination or Retaliation**

In Count III, plaintiff asserts that defendant has failed to provide plaintiff with significant promotional and career development opportunities due to plaintiff's race and gender and in retaliation for plaintiff engaging in activity protected under Title VII. Plaintiff's amended consolidated complaint lists several "significant promotional and career development opportunities" which he was allegedly denied. Defendant's arguments have highlighted several essential elements of

8

plaintiff's claim which are lacking. As plaintiff bears the burden of persuasion at trial, he cannot simply rest on his pleadings. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998). The burden shifts to him to set forth specific, admissible facts from which a rational trier of fact could find for the plaintiff. Id. His claim fails as he has not come forward with sufficient evidence on essential elements of his prima facie case in response to defendant's arguments concerning Count III.[5]

Plaintiff cannot establish a prima facie case of discrimination as he cannot establish that similarly situated employees that were not members of the protected class were treated differently. The Court applies a rigorous test to determine whether employees are "similarly situated." See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994). Plaintiff must establish that he was similarly qualified as compared to the selected applicant for the position.

Of all the job opportunities plaintiff mentions, only one involves a selectee from his working group. In this instance, Barbara Bailey, a Caucasian female, was temporarily promoted from GS-7 to GS-9. At this time, plaintiff was a GS-12 and occupied a different position than Ms. Bailey. In the another instance

---

[5] Plaintiff only argues, in his statement of material facts as to which a genuine issue exists, that the relevant comparative group is not limited to employees in plaintiff's working group. Plaintiff never raises any arguments concerning Count III in his memorandum in opposition.

9

involving a job opportunity for a member of plaintiff's working group, Vicky Bluemner, a Caucasian female and a GS-11, filled in for plaintiff after he was promoted to a GS-12 and was on assignment in Washington. Plaintiff was not similarly situated as compared to either employee. Defendant asserts that because the other selectees were not members of plaintiff's working group and did not have the same selecting supervisors they were not "similarly situated." Plaintiff has not sufficiently responded to defendant's arguments and has thus forfeited his claims in Count III.

Defendant has also provided legitimate, nondiscriminatory reasons why plaintiff did not receive temporary promotions to several of the positions he listed in his amended consolidated complaint. Among others, plaintiff listed an opportunity in Minnesota and one in Colorado. Plaintiff was recommended for both positions, but IRS employees were selected that were already stationed in those locales due to financial considerations. Plaintiff also lists a training course, which notably does not meet even plaintiff's own definition of what constitutes a development opportunity--a temporary promotion or a detail at a higher position for longer than 30 days. Nonetheless, plaintiff was recommended for the training, but was denied at the national level. Plaintiff also lists an opportunity in the Property Section to which the Property Section Chief, not Ms. Davis, temporarily and later permanently promoted Lavae Flemke, a Caucasian female, to the

position of team leader. As plaintiff was already a team leader and was not a member of the property section, he was not selected.

Furthermore, plaintiff was given a number of different developmental assignments. In 2000 and 2001, plaintiff was given the opportunity to participate on several design teams. In 2002, plaintiff was given the opportunity to participate on several leadership teams, including what was considered one of the most significant projects of the fiscal year. During plaintiff's tenure as a team leader, plaintiff was the highest graded employee in his section, other than the Section Chief Ms. Davis. When Davis was not present at work, plaintiff received the acting assignment of Section Chief. Notably, it was Ms. Davis, a Caucasian female, who selected plaintiff to become a team leader in 2000.

Plaintiff's retaliation claim under Count III also fails. A significant portion of the promotional opportunities that plaintiff complains he did not receive took place before he sought Equal Employment Opportunity ("EEO") counseling on September 30, 2002. Furthermore, defendant argues that plaintiff has not made a prima facie showing of a nexus between his protected Title VII activity and the alleged retaliation, as he testified in his deposition that the acts of retaliation have been ongoing during his entire career. Plaintiff never responds to this argument and for the reasons mentioned above concedes the claim for failing to set forth specific, admissible facts from which a rational trier of fact could find for the plaintiff.

**C. Count VI: Plaintiff Cannot Show That the Reasons He Was Not Considered for a Temporary Promotion Are Pretextual**

In Count VI, plaintiff asserts that defendant temporarily promoted Cindy Winter, a Caucasian female, to the position of Chief of Security, Safety & Logistics, GS-13, for 120 days and failed to consider plaintiff for the position because of plaintiff's race and gender and in retaliation for plaintiff engaging in activity protected under Title VII. Assuming plaintiff can establish a prima facie case, defendant sets out several legitimate, non-discriminatory reasons why plaintiff was not hired for the position. Winter was a non-bargaining unit employee, meaning she could hold the position non-competitively for 120 days, whereas plaintiff's union membership limited him to 60 days. Plaintiff had never worked in this area as compared to Winter who had years of experience. Furthermore, it was Winter's section that lost someone to a temporary promotion, so Winter's supervisor decided to promote temporarily from within as opposed to expending the effort of bringing in an employee from another section.

Plaintiff's arguments in response to defendant's reasons merely seem to assert that he was better qualified than the selected employee. There is no evidence that the person selected was not qualified for the job or that Moline, Winter's recommender, had any discriminatory intent. See Davis, 421 F.3d at 705. Plaintiff's unsupported assertions are insufficient to establish that defendant's explanations are pretextual. For those reasons,

this Court will not second guess defendant's management decisions and will grant summary judgment on this count.

**D. Counts IV and VII: Plaintiff's Complaints Concerning Discriminatory and Retaliatory Performance Ratings Do Not Set Forth a Prima Facie Case**

In Counts IV and VII, plaintiff argues that Ms. Davis gave him lower numerical performance ratings in March 2003 and March 2004, respectively, because of his race and gender and in retaliation for plaintiff engaging in activity protected under Title VII. Plaintiff is evaluated semiannually for his performance in five different areas on a scale of one through five. In March 2003, plaintiff received an evaluation with four 4s and one 5 for an average of 4.2 and filed a complaint concerning the allegedly discriminatory and retaliatory evaluation. Plaintiff's rating indicated that he "Exceeds Fully Successful"[6] and he received the same score in both his March 2002 and September 22, 2002 evaluations--both of which took place before plaintiff sought EEO counseling on September 30, 2002. There is no "causal connection" between plaintiff's third consecutive 4.2 rating in March 2003 and his EEO counseling.

In March 2004, plaintiff received a score of 4.4. Plaintiff complains that this was also in retaliation for his protected Title VII activity. Plaintiff's claim that a nexus

---

[6] On plaintiff's evaluation, the "Outstanding" box was checked. Although the parties disagree whether this was in error, only a score of 4.5 or higher earns an "Outstanding" rating.

13

exists between his protected activity and his evaluation is belied by the increase in score. Additionally, plaintiff incorrectly claims that his score precluded his annual bonus, as he did receive a bonus in 2004.

Defendant offers legitimate, non-discriminatory reasons for the 2003 performance evaluation. Plaintiff's supervisor, Ms. Davis, reports that she relied on plaintiff's self-assessment, her personal observations, and feedback from co-workers, customers and management in making her determinations. Davis received feedback from plaintiff's co-workers that he had problems communicating with and listening to them. During Davis' career, she has only recommended three employees (two Caucasian females and one Caucasian male) for a quality step increase ("QSI") and those were before 2001.[7] In 2003 and 2004, no employees in plaintiff's section received an "Outstanding"/QSI rating. Plaintiff has not set forth any evidence from which a rational fact finder could find that defendant's proffered reasons are pretextual and that intentional discrimination was the true motivation. Plaintiff's argument that checking the "Outstanding" box on his appraisal indicates that defendant discriminated or retaliated against plaintiff is unpersuasive as Davis explains that her secretary

---

[7] To receive a QSI, an employee must receive an "Outstanding" rating, a recommendation from his or her supervisor, and approval at the national level.

selected that box in error and that plaintiff's rating did not warrant an "Outstanding."

Plaintiff asserts that Davis retaliated against him when she requested and relied on customer feedback from Keith Olsen contrary to Davis' prior statement that the feedback would be ignored, and failed to obtain written feedback from another customer, David Hayes, who evaluated plaintiff favorably. Plaintiff's unsupported assertion concerning Hayes is contradicted by an email from Hayes to Davis, which was then forwarded onto plaintiff. The email indicates that Davis did indeed speak with Hayes concerning feedback. Despite plaintiff's allegations, the Court is not persuaded that plaintiff has created a reasonable inference that Davis discriminated or retaliated against plaintiff by considering all consumer feedback and giving plaintiff an "Exceeds Fully Successful" rating. Plaintiff's other arguments concerning the disparate impact of defendant's general policies on minority males "cannot support a claim of discrimination based on a disparate treatment theory." See Cardenas v. AT & T Corp., 245 F.3d 994, 1000 (8th Cir. 2001). Plaintiff's failure to set forth a prima facie case causes his claims under Counts IV and VII to fail.

For the aforementioned reasons, the Court will enter summary judgment against plaintiff and for defendant on Counts I, II, III, IV, VI, and VII. Counts V and VIII will be dismissed for

failure to state a claim upon which relief may be granted. Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss or, alternatively, for summary judgment [Doc. #34] is granted.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 25(d)(1), Henry M. Paulson, the current Secretary of the United States Department of the Treasury, is substituted for defendant John W. Snow, the former Secretary of the Treasury.

Dated this ___31st___ day of August, 2006.

                                       /s/Donald J. Stohr
                                       UNITED STATES DISTRICT JUDGE